UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| BRYAN MOSLEY,<br><br>               Plaintiff,<br><br>    v.<br><br>EGG HARBOR CITY *et al,*<br><br>               Defendants. | HONORABLE KAREN M. WILLIAMS<br><br><br>Civil Action<br>No. 22-6489 (KMW-EAP)<br><br><br>**MEMORANDUM OPINION AND<br>ORDER** |

**THIS MATTER** comes before the Court by way of Defendant Egg Harbor City ("Defendant Egg Harbor"), Defendant Police Officer Alexander DeFeo ("Defendant DeFeo"), and Defendant Police Officer Richard Carpo's ("Defendant Carpo") (collectively "Defendants") Motion for Summary Judgment (ECF No. 70). Plaintiff Bryan Mosley ("Plaintiff") opposed (ECF No. 76) and Defendants replied (ECF No. 80). Plaintiff subsequently filed a letter (ECF No. 81) responding to Defendants' reply. The Court has considered all of the parties' submissions, finds oral argument unnecessary, and, pursuant to Local Civil Rule 78.1, decides the motion on the papers; and

**WHEREAS,** summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A fact is 'material' under Rule 56 if its existence or nonexistence might impact the outcome of the suit under the applicable substantive law." *Santini v. Fuentes,* 795 F.3d 410, 416 (3d Cir. 2015) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986)); *see*

*also M.S. by & through Hall v. Susquehanna Twp. Sch. Dist.*, 969 F.3d 120, 125 (3d Cir. 2020) ("A fact is material if—taken as true—it would affect the outcome of the case under governing law."). Moreover, "[a] dispute over a material fact is 'genuine' if 'a reasonable jury could return a verdict for the nonmoving party.'" *Santini*, 795 F.3d at 416 (quoting *Anderson*, 477 U.S. at 248).

The moving party bears the burden of identifying portions of the record that establish the absence of a genuine issue of material fact. *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). The burden then "shifts to the nonmoving party to go beyond the pleadings and come forward with specific facts showing that there is a genuine issue for trial." *Id.* (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotations omitted)). To survive a motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. *Anderson*, 477 U.S. at 256-57. "A nonmoving party may not 'rest upon mere allegations, general denials or . . . vague statements . . .'" *Trap Rock Indus., Inc. v. Local 825, Int'l Union of Operating Eng'rs*, 982 F.2d 884, 890 (3d Cir. 1992) (quoting *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 500 (3d Cir. 1991)). When considering a motion for summary judgment, the court views the facts and all reasonable inferences drawn from the facts in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587; and

**THE COURT NOTING** that Defendant DeFeo and Defendant Carpo contend that Plaintiff's Fourth Amendment Excessive Force claim should be dismissed because they are entitled to summary judgment based on qualified immunity; and

**WHEREAS** to establish a right to qualified immunity, the defendant has the burden to show either that there was no constitutional violation or that the federally protected right that was allegedly violated was not clearly established. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009);

2

*Mack v. Yost*, 63 F.4th 211, 227 (3d Cir. 2023) (cleaned up). To establish a right to qualified immunity on summary judgment, the defendant must show that "there was no genuine dispute of material fact to refute their contention that they did not violate [Plaintiff's] constitutional rights as he asserted them, or show that reasonable officers could not have known that their conduct constituted such a violation when they engaged in it." *Halsey v. Pfeiffer*, 750 F.3d 273, 288 (3d Cir. 2014).; and

**WHEREAS**, the Fourth Amendment of the United States Constitution protects a persons' right to be "secure in their persons…against unreasonable…seizures." U.S. Const. amend. IV. As such, to establish a Fourth Amendment violation as the result of excessive force, a plaintiff must first show that a seizure occurred,[1] and then that, under the specific circumstances, the seizure itself was unreasonable or that it was conducted in an unreasonable manner. *Lamont v. New Jersey*, 637 F.3d 177, 183 (3d Cir. 2011). (citing *Brower v. County of Inyo,* 489 U.S. 593, 599, (1989); *Graham v. Connor,* 490 U.S. 386, 395–96, (1989)).

The reasonableness of a seizure is an objective question that balances the government's interests that were at stake with the nature and quality of the intrusion on the plaintiff. *See Graham,* 490 U.S. at 396. When competing factual narratives exist, disputed material facts prevent the court from determining whether, as a matter of law, a defendant's use of force was objectively reasonable. *McKoy v. Carter*, 543 F. App'x 231, 235 (3d Cir. 2013).; and

**WHEREAS**, Local Civil Rule 56.1 requires the party filing a motion for summary judgment to separately file a statement of undisputed material facts citing to the record to support each fact. Loc. Civ. R. 56.1. The opposing party must file a responsive statement, addressing each fact, "indicating agreement or disagreement and, if not agreed, stating each material fact in dispute

---

[1] In this case, no party argues that Plaintiff was not seized.

3

and citing to the affidavits and other documents submitted in connection with the motion." *Id.* The opposing party may also file a supplemental statement of facts, which the party that filed the motion for summary judgment must respond to in the same manner as described above. *Id.*

In this case, Defendants filed a statement of undisputed material facts ("SMF") (ECF No. 70-1), to which Plaintiff responded ("RSMF") (ECF No. 75). Plaintiff also furnished a supplemental counterstatement of undisputed material facts ("CSMF") (ECF No. 75), to which Defendants responded ("RCMF") (ECF No.80-1). Defendant's SMF contained eighty (80) individual paragraphs of undisputed facts. *See* SMF. In Plaintiff's response, he denies forty-four (44) of these "undisputed" facts. *See* RSMF. While some of the facts that Plaintiff denies may not be material, others go directly to whether Defendants used excessive force.

For example, in their SMF Defendants state: "Mosely then tried to leave the apartment, which door of which was right next to the stairs. <u>See</u> **Exhibit A**;  <u>See</u> **Exhibit E**, 1:44-1:47; <u>See</u> **Exhibit F**, 1:38-1:41." SMF at ¶ 14. Plaintiff responds: "Denied. Plaintiff got up to use the bathroom and in the state of confusion that he was in and went to the apartment's front door instead of the bathroom door. When Plaintiff got up and walked to the door he was unimpeded. <u>See,</u> Defendant's Exhibit E, 1:33-2:00; Defendant's Exhibit F, 1:31-2:00."

This fact goes to the context of the interaction between Defendants and Plaintiff prior to Plaintiff being restrained. Under Defendants' version a reasonable jury could infer that the Plaintiff was attempting to flee. Under Plaintiff's version, a reasonable jury could infer that Plaintiff's behavior was the result of the severe medical episode he was allegedly experiencing. These two different inferences that arise from a disputed fact would differently inform the factfinder's determination of whether the force Defendants later used was reasonable or not.

This is but one example of the disputed facts that the Court identified in the supplemental

4

papers alone. Upon review, the Court identified at least twenty-seven (27) of the forty-four disputed facts that were equally material to the determination of whether Defendants' use of force was reasonable.[2] Given that there are clearly disputed facts as to whether Defendants' use of force was reasonable, the Court cannot conclude as a matter of law that Defendants did not use excessive force; and

**THE COURT NOTING** that Defendant Carpo and Defendant DeFeo contend that they are entitled to qualified immunity as to Plaintiff's Excessive Force claim because Plaintiff's rights were not clearly established at the time of the incident; and

**WHEREAS**, a right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Additionally, "in the light of pre-existing law the unlawfulness [of the challenged actions] must be apparent." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002). Therefore, "existing precedent must have placed the statutory or constitutional question confronted by the official beyond debate." *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014). (cleaned up). This precedential requirement mandates that "the rule must be settled law, which means it is dictated by controlling authority or a robust consensus of cases of persuasive authority." *D.C. v. Wesby*, 583 U.S. 48, 63 (2018). (cleaned up). Accordingly, courts in the Third Circuit "look first for applicable Supreme Court precedent. If none exists, [courts] consider whether there is a case of controlling authority in [the Third Circuit] or a robust consensus of cases of persuasive authority

---

[2] This alone would be enough to conclude that there are material facts that are disputed such that summary judgment is not appropriate. However, the Court notes that in Plaintiff's CSMF, Plaintiff listed ninety-nine (99) individual facts and twenty-four (24) supplemental bullet points to fact ninety-nine (99). Defendants—the moving parties with the burden to establish that there are no genuine issues of material fact—denied eighty-one (81) of those facts, as well as a categorical denial of all twenty-four (24) bullet points. Many of the facts that Defendants denied would materially alter the inferences a jury could reasonably draw, indicating that there are disputed facts that must be resolved by a jury and that summary judgment is not appropriate.

in the Courts of Appeals." *New Jersey Chinese Cmty. Ctr. v. McAleer*, No. CV 21-08320 (GC) (RLS), 2025 WL 1564869, at *9 (D.N.J. June 3, 2025) (citing *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 449 (3d Cir. 2020)); and

**WHEREAS**, the Third Circuit has expressly held that "the right of an arrestee to be free from the use of excessive force in the course of his handcuffing" is clearly established and that "a reasonable officer would have known that employing excessive force in the course of handcuffing would violate the Fourth Amendment." *Kopec v. Tate*, 361 F.3d 772, 778 (3d Cir. 2004). In *Kopec*, the Court analyzed established law from our sister circuits, including *Palmer v. Sanderson,* 9 F.3d 1433 (9th Cir.1993). In *Palmer*, the Court denied summary judgment on qualified immunity when an officer "allegedly employed excessive force by handcuffing plaintiff so tightly that he was in pain and was left bruised for several weeks." *Id.* at 1436.

Just as in *Kopec* and *Palmer*, cases which both significantly predate the events alleged here, Plaintiff had a right to be free from the excessive use of force in the course of handcuffing. Defendants cannot convincingly argue that they were not on notice that their conduct would violate Plaintiff's Fourth Amendment right when Plaintiff persistently complained that the handcuffs were causing him pain, he repeatedly requested that Defendants remove the handcuffs, and Defendants could observe the handcuffs cutting Plaintiff's wrists. Further evidence indicates that Defendants observed and acknowledged that the handcuffs were cutting Plaintiff's wrists, which prompted a discussion about a prior incident in which an individual sustained such severe wrist injuries from handcuffing that Defendants were unsure whether he lost consciousness due to blood loss or sedation. Accordingly, the Court finds that Plaintiff's right to be free from excessive force in the course of handcuffing was clearly established at the time of the incident and Defendants are not entitled to qualified immunity; and

6

**THE COURT NOTING** that Defendant DeFeo and Defendant Carpo contend that Plaintiff's Failure to Intervene claim should be dismissed because, as a matter of law, there was no constitutional violation, and, alternatively, that if there are disputed facts as to whether there was a constitutional violation, Defendants DeFeo and Carpo did not have a reasonable opportunity to intervene; and

**WHEREAS** a law enforcement officer is liable under § 1983 if he observes another officer committing a constitutional violation, such as the use of excessive force, and fails to intervene when he had a reasonable opportunity to do so. *See Smith v. Mensinger*, 293 F.3d 641, 651 (3d Cir. 2002). For summary judgment to be appropriate, Defendants must show that there are no material facts in dispute as to whether Plaintiff's constitutional right was violated, and as to whether Defendants had a reasonable opportunity to intervene. *See White v. City of Vineland*, 500 F. Supp. 3d 295, 306 (D.N.J. 2020). Generally, if an officer is "in the vicinity when a constitutional violation occurs [he] has the opportunity to intervene, at least for purposes of summary judgment." *Id*. Further, "the duration of the incident is key to determining whether there was a reasonable opportunity to intervene. There may be a genuine issue of fact regarding a reasonable opportunity to intervene where the allegedly excessive force lasts about fifteen minutes, or where the event unfolds in multiple stages." *El v. City of Pittsburgh*, 975 F.3d 327, 335 (3d Cir. 2020) (cleaned up).

In this case, Defendant DeFeo and Defendant Carpo were both in the vicinity for the duration of the alleged use of excessive force, which their Body Worn Camera ("BWC") footage shows lasted up to forty-two (42) minutes, a period of time that clearly exceeds fifteen (15) minutes. Further, the alleged events unfolded in multiple stages, beginning when Defendants arrived at the Plaintiff's residence in response to a medical emergency and handcuffed him less

than six (6) minutes later. Next, Plaintiff was removed from the apartment while still handcuffed and complaining of pain and was then transferred onto a stretcher with his hands still handcuffed behind his back. Finally, Plaintiff remained laying on his handcuffed hands and complaining of pain even after he was no longer acting, as Defendants described, agitated and aggressively, including after he was sedated and contained in the ambulance with multiple EMTs and Defendant DeFeo during transport to the hospital.

The Court's finding *supra* that genuine issues of material fact exist as to whether excessive force was used, coupled with the extended timeframe of the alleged force and the incident unfolding in multiple stages lead to the conclusion that summary judgment is not appropriate as to Plaintiff's Failure to Intervene claim against Defendant Carpo and Defendant DeFeo; and

**THE COURT NOTING** that Defendant DeFeo and Defendant Carpo contend that Plaintiff's False Arrest/False Imprisonment and Illegal Search and Seizure claims must be dismissed because probable cause existed to detain Plaintiff;[3] and

**WHEREAS**, probable cause exists when "the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Collins v. Christie*, 337 F. App'x 188, 191 (3d Cir. 2009). Whether probable cause existed is a mixed question of fact and law that is typically determined by a jury. *Id.* at 192. However, the question may be resolved by a court when the court concludes that "probable cause exist[ed] as a matter of law [because] the evidence, viewed most favorably to Plaintiff, reasonably would not support a contrary factual finding." *Id.* However, summary judgment is not appropriate when issues of material fact exist as to whether

---

[3] Defendants collapse their arguments for dismissal of Plaintiff's claims for False Arrest/Imprisonment and Illegal Search and Seizure into a single section. As such, the Court will analyze the merits of those arguments as one as well.

8

the officer had probable cause to detain the plaintiff such that a reasonable jury could properly draw inferences in favor of the non-moving party. *See Groman v. Twp. of Manalapan*, 47 F.3d 628, 635 (3d Cir. 1995); *Montgomery v. De Simone*, 159 F.3d 120, 124 (3d Cir. 1998); *Harvard v. Cesnalis*, 973 F.3d 190, 199 (3d Cir. 2020).

Under the Community Caretaking Doctrine,[4] officers may detain an individual without criminal probable cause when they do so to protect the detained individual or the surrounding community. *Vargas v. City of Philadelphia*, 783 F.3d 962, 972 (3d Cir. 2015) (holding that the community caretaking doctrine can apply when "a person outside of a home has been seized for a non-investigatory purpose and to protect that individual or the community at large and that summary judgment is appropriate when the undisputed facts show that the officer's actions were objectively reasonable.").

In *Vargas v. City of Philadelphia*, the Court found that, as a matter of law, the defendant police officers acted objectively reasonably when "[t]hey were responding to a volatile situation

---

[4] The Court acknowledges Plaintiff's objection to Defendants' argument in their Reply (ECF No. 80) regarding the Community Caretaking Doctrine. Plaintiff argues in a letter (ECF No. 81) filed in response to Defendants' reply, that Defendants did not raise the Community Caretaking Doctrine argument in their Motion for Summary Judgment (ECF No. 70) and that they instead improperly raised it in their Reply (ECF No. 80). Upon review, Plaintiff is correct in that Defendants did not, by name, raise the Community Caretaking Doctrine in their moving brief. However, Defendants did substantively argue that the principles that underly the Community Caretaking Doctrine—that there is probable cause for a non-investigatory detention when officers act to protect the detained individual or others—applied in the circumstances of this case. (Defs.' Br. at p. 24) ("In the instant matter, Officers DeFeo and Carpo were dispatched to respond to a call regarding a medical emergency involving a male inside an apartment. SOF ¶1. Upon their arrival, the officers were quickly directed to Plaintiff's presence in the apartment. SOF ¶¶2-3. Mosley was incoherent, not speaking intelligibly, exhibiting erratic movements and appeared to possibly be under the influence of drugs. SOF ¶¶4-12. When the officers attempted to engage Plaintiff in conversation, he was immediately agitated and failed to follow any directions. *Id.* He then attempted to leave the apartment, even though EMS was then arriving and Plaintiff clearly needed medical attention. SOF ¶¶13-16, 30-32. At this point in time, there is no question that probable cause existed for Plaintiff to be detained for his own safety and the safety of everyone else present while he was assessed medically by the EMS personnel. Mosely's erratic and aggressive behavior was creating a danger for everyone present. Plaintiff was subsequently placed under control by Officers DeFeo and Carpo by the placing of handcuffs upon him. SOF ¶35."). In response to this argument, Plaintiff's opposition stated: "There is no such thing as probable cause to detain Plaintiff so that he could allegedly receive medical treatment." (Pl.'s Opp. at p. 18). Plaintiff's argument invites Defendants to respond, which they do by pointing to case law that establishes that probable cause to detain an individual can exist in a non-investigatory capacity outside of the criminal context when officers act to ensure the safety of the individual or the community at large. (Defs.' Reply at p. 8-10). The Court finds nothing improper about Defendants' argument in their Reply regarding the Community Caretaking Doctrine.

9

which they did not initially know involved a medical emergency, and any brief seizure that may have occurred was a result of the officers' concern for the safety of everyone involved." 783 F.3d at 972. Nothing in the facts of *Vargas* indicate that the plaintiff, who was suffering a medical emergency, was handcuffed or physically detained at any point. *Id.* Rather, the alleged detainment was the result of the defendant officer's oral directive to the plaintiff to wait for an approaching ambulance to arrive, which was imminent. *See Id.* Additionally, the alleged non-physical detainment lasted no longer than "a few minutes" at most. *Id.*

These are not the facts of this case. Here, Defendants were dispatched explicitly to assist Plaintiff with a medical emergency occurring inside his residence. During the interaction Defendants observed that Plaintiff "clearly needed medical attention." Defs.' Br. at p. 24. Plaintiff was handcuffed, allegedly for his safety and the safety of others, less than six minutes after Defendant Carpo and Defendant DeFeo arrived, and he remained handcuffed even after he was sedated and arrived at the hospital more than forty (40) minutes later. (Defs.' SMF at ¶¶ 58-68; Defs.' Ex. E 5:42-48:20.) Assuming the Community Caretaking Doctrine were to apply in this situation, the Court still cannot conclude as a matter of law, even based on a non-investigatory probable cause standard, that Defendants acted objectively reasonably. Therefore, summary judgment is not appropriate as to Plaintiff's claims of False Imprisonment/Arrest and Illegal Search and Seizure; and

**THE COURT NOTING** that Defendant Egg Harbor argues that Plaintiff has not established a viable *Monell* Claim for failure to train, supervise, or monitor officers because Plaintiff does not offer evidence of Defendant Egg Harbor's deliberate indifference to a pattern of constitutional violations; and

10

**WHEREAS**, to establish *Monell* liability for a failure to train, a plaintiff must prove two essential elements: deliberate indifference and causation. *Thomas v. Cumberland Cnty.*, 749 F.3d 217, 222 (3d Cir. 2014). Specifically, when the alleged policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir.1999) (quoting *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197 (1989)). Additionally, the alleged deficiency in training must have "actually caused the police officers' indifference to [Plaintiff's] medical needs." *Canton*, 489 U.S. at 379. This means that "[i]n resolving the issue of a city's liability, the focus must be on adequacy of the training program in relation to the tasks the particular officers must perform." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). Summary judgment is not appropriate when "a genuine dispute of material fact exists as to whether the need for more or different training for [defendants] was obvious, and the failure to provide that was very likely to result in a violation of constitutional rights." *Forrest v. Parry*, 930 F.3d 93, 110 (3d Cir. 2019).

In this case, Defendants admitted, at least partially, to the following facts:

10. The only training that Officer Carpo received regarding medical calls was performing CPR and lifesaving measures. Defendants' Exhibit D, 21:12-19.

11. Officer Carpo had no training regarding how to deal with a person who is suffering from a seizure. Defendants' Exhibit D, 22:20-23.

12. Officer Carpo possessed no knowledge of whether to handcuff a person who is having a seizure. Defendants' Exhibit D, 23:7-18.

13. Officer DeFeo also did not receive any formal training regarding individuals who are suffering from a seizure but learned through on-the-job training that you should not restrain an individual who is actively having a seizure. Defendants' Exhibit C, 15:8-24, 16:3-8, 30:7-9.

11

> 14. Officer DeFeo indicated that in his experience when someone is coming out of a seizure, they can be unconscious, barely conscious, not speaking, eyes open or closed and might appear confused or intoxicated. Defendants' Exhibit C, 16:16-17:6.

Pl.'s CSMF at ¶¶ 10-14; Defs.' RCMF at ¶¶ 10-14.

Although Defendants admit each of these facts in some respect, many such admissions are qualified, with Defendants denying material portions or supplementing the facts with additional evidence that could reasonably alter the inferences drawn by a jury. For example, Defendants admitted that "Officer DeFeo indicated that in his experience when someone is coming out of a seizure, they can be unconscious, barely conscious, not speaking, eyes open or closed, and might appear confused or intoxicated." Pl.'s CSMF ¶ 14; Defs.' RCMF ¶ 14. However, Defendants qualified that admission by citing additional testimony wherein Defendant DeFeo stated that "there are no specific guidelines for treating post-seizure individuals and that the goal is 'to do your best to keep them and all parties in the area safe.'" *Id.*

The inferences to be drawn from these facts differ depending on which party's version the jury credits more heavily. For example, under Plaintiff's account, a reasonable jury could infer that if Defendant DeFeo had been sufficiently trained in responding to medical emergencies, he would have recognized the behavior he described as agitated and aggressive as signs of a seizure, especially given that he was dispatched to Plaintiff's residence explicitly for a man experiencing a seizure. Conversely, if a jury were to credit Defendants' expanded account, it could reasonably infer that Defendant DeFeo had sufficient training to identify potential signs of a seizure and was aware of the applicable practices, if any, governing treatment of such individuals.

These types of competing inferences regarding the quality, scope, and existence of Defendants' training in responding to medical emergencies would weigh heavily in a factfinder's

determination of whether Defendant City of Egg Harbor was deliberately indifferent to a risk of constitutional violations arising from inadequate training. Accordingly, summary judgment on Plaintiff's *Monell* failure-to-train claim is not appropriate; and

**THE COURT NOTING** that Defendants contend that Plaintiff's claims for violations of the New Jersey Law Against Discrimination ("NJLAD") should be dismissed because Plaintiff has failed to show that he would have been treated differently but-for his alleged disability; and

**WHEREAS**, to establish a claim for discrimination under the NJLAD, a plaintiff must show that: (1) the police operate a place of public accommodation; (2) the plaintiff is disabled within NJLAD's definition; and (3) the plaintiff was denied equal treatment based on his disability. *K.J. v. J.P.D.*, 659 F. Supp. 3d 471, 477 (D.N.J. 2023); *Greene v. Lance*, No. CV2114399, 2022 WL 1241309, at *4 (D.N.J. Apr. 27, 2022); *Vergara v. Keyes*, No. 20-1460, 2020 WL 7778080, at *4 (D.N.J. Dec. 30, 2020).

"The Superior Court of New Jersey, Appellate Division has held that a 'police department—both the building and the individual officers—is a place of public accommodation.'" *K.J.* 659 F. Supp at 477. (citing *Ptaszynski v. Uwaneme*, 371 N.J.Super. 333, 853 A.2d 288, 297 (Ct. App. Div. 2004)). Further, "the discriminatory acts of law enforcement officers are considered public accommodation discrimination under the NJLAD." *Vandegrift v. Bowen*, No. CIV.A 07-2623, 2009 WL 1913412, at *3 (D.N.J. June 30, 2009).

New Jersey Courts have recognized that under the NJLAD, the definition of "disability" is broad, encompassing broader protections than federal law. *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 848 n. 30 (3d Cir. 2016). The NJLAD expressly adopts seizure disorders as a disability. N.J. Stat. Ann. § 10:5-5.

13

The final element, causation, proceeds by way of the *McDonnell Douglas* burden shifting framework, which initially requires the plaintiff to establish a prime facie case of discrimination. Once plaintiff has established a prime facie case, the defendant must then show that a legitimate, non-discriminatory reason existed for the adverse treatment. *Rich v. State*, 294 F. Supp. 3d 266, 279 (D.N.J. 2018). If the defendant articulates such a reason, the burden then shifts back to plaintiff to show that the defendant's "proffered reason was merely a pretext for discrimination." *Id.*

Under the NJLAD, an individual may be liable based on a theory of aiding and abetting. *K.J.*, 659 F. Supp. at 477. N.J.S.A. 10:5-12(e) provides that it is unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under this act, or to attempt to do so." N.J.S.A. 10:5-12(e).[5] To hold a defendant individually liable for aiding and abetting, "the employer must also be liable under the LAD." *Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425, 463 (D.N.J. 2009).

In this case, Plaintiff claims that Defendant Egg Harbor discriminated against him by failing to train its police officers how to properly manage a medical emergency and that this failure has resulted in a widely held practice of disparate treatment for those suffering from disabilities that is tantamount to discrimination. In support of this assertion, Plaintiff cites a conversation between Defendants DeFeo and Carpo and EMTs wherein Defendant DeFeo described a prior encounter with an individual who was experiencing a medical emergency. In that incident, Defendant DeFeo apparently restrained the individual in handcuffs which cut the individual so severely that officers and EMTs were not sure if he lost consciousness from blood loss or sedation.

---

[5] A defendant employee may be liable for aiding and abetting if the plaintiff establishes that: (1) the party whom the defendant aided performed a wrongful act that caused an injury; (2) the defendant was generally aware of his role as part of an overall illegal or tortious activity at the time that he provided assistance; and (3) the defendant knowingly and substantially assisted the principal violation. *Tarr v. Ciasulli*, 181 N.J. 70, 84, 853 A.2d 921 (2004) (quoting *Hurley v. Atlantic City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999)).

14

Defendant points to a lack of evidence regarding derogatory statements that would demonstrate that the Defendants treated Plaintiff with animus because of his seizure disability. Defendants further point to the fact that Defendant DeFeo and Defendant Carpo did not engage in any use of force whatsoever until Plaintiff's "erratic and aggressive behavior resulted in the officers and EMTs being physically shoved," which they argue indicates that they would have treated any other individual that did not have a disability in the same manner. Defs.' Opp. at p. 36. These competing narratives present genuine issues of material fact that would permit a reasonable jury to draw different inferences regarding whether Defendants discriminated against Plaintiff because of his disability. As such, summary judgment as to Plaintiff's claims of violations of the NJLAD is not appropriate; and

**THE COURT NOTING** that Defendants contend that Plaintiff's claim for damages for emotional distress should be dismissed because Plaintiff has not presented any evidence to demonstrate that he has suffered emotional injuries that would entitle him to damages; and

**WHEREAS**, to establish a right to compensatory recovery for emotional distress under § 1983, a plaintiff must show that a constitutional violation occurred, that the plaintiff "in fact suffered emotional distress, embarrassment and/or humiliation" and that the defendant's conduct "proximately caused plaintiff's injury." *Aumiller v. Univ. of Delaware*, 434 F. Supp. 1273, 1310 (D. Del. 1977). Expert evidence is not required to establish plaintiff's emotional injuries, however there must be some evidence in the record that would permit a reasonable jury to conclude that the plaintiff suffered an emotional injury. *Bolden v. Se. Pennsylvania Transp. Auth.*, 21 F.3d 29, 34 (3d Cir. 1994). As such, courts reject claims for emotional distress when a plaintiff cannot point to evidence in the record showing that their emotional distress was caused by the constitutional violation. *Padilla v. Miller*, 143 F. Supp. 2d 479, 494 (M.D. Pa. 2001).

15

In this case, Plaintiff argues that he is in constant fear of the police and that his "phobia" is so intense that he is afraid that he will have another medical episode requiring the assistance of first responders. Pl.'s Opp. at p. 28. Further, Plaintiff contends that he "sought professional help to deal with this tumult." *Id.* Defendants, while explicitly conceding that evidence of medical treatment and medication for emotional distress are not necessary to establish a claim for emotional distress, nonetheless argue that Plaintiff "did not go to a doctor and did not receive any medication as a result of his alleged emotional distress." Defs.' Br. at p. 37. Defendants then argue that none of the evidence in the record indicates that Plaintiff was "rendered physically and/or emotionally debilitated in a manner which would disable him from performing normal work or social activities." *Id.*

Given Plaintiff's contention that he sought "professional services" for his emotional injuries and was "briefly treated for same" and Defendants' assertion that Plaintiff has not sought medical intervention for his emotional distress, a genuine issue of material fact remains regarding whether Plaintiff has presented sufficient evidence to establish a claim for emotional distress. As such, summary judgment as to Plaintiff's claim for emotional distress is not appropriate; and

**THE COURT NOTING** that Defendants contend that Plaintiff's claims for punitive damages should be dismissed because Plaintiff has not established evidence that Defendant DeFeo and Defendant Carpo acted with the requisite state of mind.[6]; and

**WHEREAS**, when a Plaintiff seeks punitive damages against individual capacity defendants under § 1983 "a jury may be permitted to assess punitive damages…when the

---

[6] Defendants also argue that Plaintiff's claim for punitive damages against Defendant Egg Harbor should be dismissed because § 1983 does not permit punitive damages against municipalities. Plaintiff responds that he does not seek punitive damages against Defendant Egg Harbor and only seeks punitive damages against Defendant DeFeo and Defendant Carpo in their individual capacities, as permitted under § 1983.

defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Here, Defendants make a conclusory statement that no reasonable jury could find that Defendant Carpo and Defendant DeFeo possessed the requisite state of mind to award punitive damages. Plaintiff argues that while experiencing a medical emergency, which Defendants were aware of, he was handcuffed, tackled to the ground, and held down by multiple people. Plaintiff further argues that the handcuffs were subsequently tightened multiple times despite Plaintiff's repeated complaints of pain and that Defendants never adjusted the handcuffs in response to those complaints. Plaintiff remained restrained for more than forty (40) minutes, even after he had been sedated and transported to the hospital.

Genuine questions of material fact exist as to whether Defendant DeFeo and Defendant Carpo acted with the requisite recklessness or callous indifference to justify an award of punitive damages. As such, summary judgment as to Plaintiff's request for punitive damages is not appropriate.

Accordingly, **IT IS HEREBY** on this 31st day of March, 2026,

**ORDERED** that Defendant's Motion for Summary Judgment (ECF No.70) is **DENIED**.

KAREN M. WILLIAMS
United States District Judge

17